THE CITY OF JOHNSTOWN, Respondent, *v.* MORTIMER WADE and Others, Appellants.

*Street openings in the city of Johnstown — condemnation necessary only of the lands to which the city has not the title — effect of the refusal of parties, who have agreed to convey to the city, to fulfill their agreement — separate condemnation proceedings may be maintained for each parcel required — unsuccessful termination of condemnation proceedings against other lands.*

Under the charter of the city of Johnstown (Laws of 1895, chap. 568), in reference to laying out, opening and extending streets in said city, the city is authorized to take only such land as is necessary, and if it already owns any land within the lines of the proposed street, or if any land has been given to it, it is not necessary to condemn such land; and if any portion of the proposed street has already been opened and occupied as a street, in conformity with the proposed extension, it is then necessary only to take and condemn the intermediate lands.

The refusal of persons, who have agreed to convey land to the city for the purpose of a street, to fulfill their agreement, does not affect the regularity of condemnation proceedings against owners of other land to be appropriated for the purpose of the street; such proceedings present no legal objection to any subsequent, separate proceeding against the lands of the owners who have not fulfilled their agreement, and whose property it is necessary to acquire in order to complete the opening of the street; separate applications may be made to the court for each piece of land required to be taken.

The fact that the city has failed in its subsequent proceedings to secure orders of condemnation against the lands of persons who at first agreed to convey such lands to it for the purpose of the street, does not affect a condemnation proceeding against the land of another owner — certainly where an application for leave to abandon the proceeding has not been made by the city as required by section 3374 of the Code of Civil Procedure before the expiration of thirty days after the entry of the final order.

APPEAL by the defendants, Mortimer Wade and others, from an order of the Supreme Court, made at the Fulton Special Term and entered in the office of the clerk of the county of Fulton on the 15th day of November, 1897, relieving the plaintiff from a final order, entered in said clerk's office on the 27th day of January, 1897, to the effect that, upon payment of $8,000, purchase money, as by said order directed, the plaintiff, The City of Johnstown, might enter into possession of certain real property, and also allowing said city of Johnstown to abandon a proceeding to acquire the title to said real property.

On or about the 16th day of March, 1896, a petition, certified to by the city engineer to have been signed by the required number of property owners, both as to the majority of owners and number of linear feet front, was filed with the city clerk of the city of Johnstown, petitioning the mayor and common council to lay out, open and extend South Market street in said city, from West Montgomery street to the south boundary line of the city of Johnstown.

Thereafter, and on the 25th day of May, 1896, the common council of said city passed a resolution, reading in part as follows : "*Resolved.* That the common council of the city of Johnstown intend to extend South Market street in said city, from its present southerly terminus in West Montgomery street, south to the south corporate limits of said city." The resolution further provided for the width of the street, and that the same should, as nearly as may be, form one and the same straight line with the easterly line of

said South Market street as then laid out; and a further resolution provided that the city engineer should survey the said extension and place monuments thereon and make duplicate maps thereof as required by the charter of the city.

Thereafter, and on the 20th day of July, 1896, the common council, after reciting that it had declared its intention to extend South Market street southerly from West Montgomery street through the lands of Mortimer Wade, James Younglove, Isaac Gustin and James Heagle to First avenue, and that the lands of said persons were necessary to be taken for such extension; and that the common council had caused the same to be surveyed and monumented showing the line thereof, and a map to be made of the same and filed in the proper clerk's office, which map shows the lots, tracts and parcels of land necessary to be taken, and after giving a description of the lands necessary to be taken, then adopted a resolution declaring their intention to appropriate such property " For the proposed improvement and extension of South Market street southerly from its present terminus in Montgomery street to First avenue." First avenue is some four blocks north of the south boundary line of the city.

On the 7th day of December, 1896, the common council of said city, after reciting that the common council had caused the lands in the resolutions hereinafter described to be surveyed, " With the intention to acquire the same for the purpose of extending South Market street south from West Montgomery street to First avenue," and also reciting that they had placed monuments showing the line thereof, and had a map made of the same, which had been filed in the proper clerk's office, showing upon such map the lots and parcels of land necessary to be taken, adopted a resolution reading in part as follows : " *Resolved*. That the common council by this resolution, declares its intention to take and appropriate for the proposed extension of South Market street from West Montgomery street southerly to First avenue all that certain lot of land belonging to Mortimer Wade ; " then follows a description of the lands of Mortimer Wade, and also a description of the lands of James Younglove, Isaac Gustin and James Heagle. At the same meeting of the common council it was resolved, " That a written offer to purchase the property of Mortimer Wade for the extension of South Market

street in the city of Johnstown, at eight thousand dollars, signed by the mayor and attested by the clerk under the seal of the city, be made to Mortimer Wade in the following form;" then follows the form of the offer.

This offer was served upon Wade, who refused to accept it, whereupon a petition was presented by the city of Johnstown to the Supreme Court asking for the condemnation of such property.

Notice of such application being given to the defendant, he served a written acceptance of the offer theretofore made by the city to purchase his property, and thereupon on a written stipulation signed by the attorney for the city and the attorney for Wade, Alida G. Wells and Emma Taylor, the last two of whom held mortgages upon the property in question, a judgment was entered condemning such property, and ordering that upon the payment of $8,000, $2,000 thereof to the defendant Emma Taylor, and the balance to Alida G. Wells, the plaintiff, that is the city of Johnstown, may enter into possession of the real property described in the petition, and take and hold it for the public uses therein specified, that is to say, "for the extension of South Market street from Montgomery street to First avenue."

This order and judgment were made at a Special Term of this court on the 18th day of January, 1897, and were entered in the Fulton county clerk's office on the 27th day of January, 1897.

Thereafter, and on the 10th day of August, 1897, the defendants caused an entry to be made on the docket of judgment in the Fulton county clerk's office, as if they had procured a judgment for $8,000 against the city of Johnstown on the day the said order was entered in the Fulton county clerk's office.

Thereafter, and by a petition dated October 7, 1897, the city of Johnstown, claiming that the statutory requirements to condemn land for street purposes had not been complied with, made an application to a Special Term of this court to be relieved from the order of the court in such proceedings and for the setting aside of such final order, and that it might be permitted to abandon its proceedings to acquire title to the real estate of the defendants, and such Special Term, on the 15th day of November, 1897, made an order granting the prayer of the petitioner, relieving it from the order made on the 18th day of January, 1897, and entered in the clerk's office on

the 27th day of January, 1897, and directed the county clerk of Fulton county to cancel the docket of said judgment against the city of Johnstown in favor of Mortimer Wade, Emma Taylor and Alida G. Wells, made on the 10th day of August, 1897, in which it was made to appear that such persons had recovered a judgment against the city of Johnstown for $8,000, directing, however, that the city of Johnstown pay to the attorney for defendants the sum of $50 as his costs of the proceedings. From such order the defendants Wade, Taylor and Wells appeal to this court.

*J. Keck,* for the appellants.

*Andrew J. Nellis,* for the respondent.

HERRICK, J.:

The order appealed from was made upon the ground that, where it is necessary, in order to open a street, that there should be a petition of the property owners fronting upon such street, and that petition requests the opening of the street to a given point, and the city authorities proceed to open it for a shorter distance than is prayed for by the petitioners, the proceeding is not in accordance with the petition, and is, therefore, illegal. I agree that such proposition is correct; the question for us to determine is whether it is applicable to the facts in this case.

Section 72 of chapter 568 of the Laws of 1895, being the charter of the city of Johnstown, provides as follows: "No expenditures for any local improvement in said city, the expense of which is to be defrayed wholly or partly by local assessment, shall be incurred, unless the common council shall first, by resolution, declare its intention to make such local improvement. The common council may, by resolution, declare its intention to construct or repair sewers, gutters and sidewalks, or to grade, fill, excavate, gravel or sprinkle streets without preliminary petition therefor or consent thereto. The common council shall not declare its intention to make any other local improvement, the expense of which is to be borne wholly or partially by local assessment, unless the owners of at least one-half of the total number of front feet linear measurement, or at least one-half in number of the owners of property on the street upon which the proposed improvement is to be made, petition therefor or consent thereto in writing, and a certificate of the city engineer be

indorsed thereon or attached thereto, to the effect that he has examined such petition or consent, and that such required number of property owners have signed the same, which certificate shall be *prima facie* evidence of the facts therein contained."

Section 81 of the same chapter provides as follows : " Whenever the common council shall intend to lay out, alter, widen, extend, contract or discontinue any street, lane, alley, highway or public grounds in said city, and the lands of any person or corporation, or any right or easement therein will be necessary for that purpose; and whenever the common council shall intend to acquire lands, rights or easements therein for any other purpose mentioned in this act, they shall cause the same to be surveyed and monuments placed showing the line thereof, and a map to be made of the same."

It further provides that the common council, after making and filing the map containing the description of the property to be taken, shall declare by resolution their intention to take and appropriate said property for the proposed improvement; and thereafter they may purchase such land deemed necessary of the owners thereof, and upon their failure to agree upon the price, they may acquire the same by condemnation under the provisions of the Condemnation Law of the State (Chap. 23, Code Civ. Proc.).

It will thus be seen that the statute provides, first, for the declaration of the common council of its intention to make such local improvement, and that whenever it is necessary to acquire lands for the purpose of making such improvement, they shall make and file maps of the lands necessary to be taken, and monument the same, and shall then declare by resolution their intention to take and appropriate the said property for the proposed improvement.

As we have seen from the statement of facts, after the presentation of the petition to extend South Market street to the south boundaries of the city, the common council on the 25th day of May, 1896, passed a resolution in which they declare their intention " to extend South Market Street * * * from its present southerly terminus in West Montgomery Street, south to the south corporate limits of said city."

That declaration of intention was as broad as the request of the petitioners.

This declaration of intention constituted the formal opening or

extension of the street. All subsequent proceedings provided for are simply for the purpose of carrying that intention into effect, and to practically and physically open or extend such street.

The next step to be taken under the charter was to map and monument the proposed line of the street; that appears to have been done. The next proceeding in order would be a declaration of their intention to take the lands necessary for the purpose of opening the street. Now it seems to me that it must be apparent that this requirement of the statute authorizes them to take only such land as is necessary, and that if the city already owns any land upon the line of such proposed street, or if any has been given to it, there would be no necessity to condemn such land, or if between Montgomery street and the south bounds of the city, any portion of South Market street, as they proposed to extend it, was already opened and occupied as a street, whose lines were in conformity with the proposed extension, and with the rest of the street, that then it would be only necessary to take and condemn the intermediate lands.

Upon the application to the court for a judgment condemning the lands of Wade, the city of Johnstown set out in its petition the following statement: "The public use for which the said property is required is the extension of South Market street, in the city of Johnstown, south from West Montgomery street over the said lands, and over lands of the said James Younglove, of Isaac Gustin and of James Heagle to First Avenue in said city. South Market street, in the said city of Johnstown, is a street running from the northerly limits of said city to the lands aforesaid of the said Mortimer Wade, and commencing again at First Avenue and proceeding thence southerly to the southerly limits of said city. The said Isaac Gustin, James Younglove and James Heagle have consented to convey lands belonging to them to the city of Johnstown for the purpose of said extension, so that by the acquisition of the lands hereinabove described of the said Mortimer Wade, the said city will be enabled to extend the said street from its northerly limits to its southerly limits as aforesaid."

And this statement is in no wise contradicted upon this application, and it would appear, therefore, from such statement that the only lands necessary for the city to acquire for the purpose of carrying

out its declared intention of opening South Market street from West Montgomery street to the south lines of the city, were the lands of the defendant Wade.

As we have seen, the only power to condemn conferred upon the common council is to condemn such lands as are necessary to open and lay out the proposed street; therefore, they could condemn no more than Wade's land.

The resolution of May 25, 1895, was the resolution to extend the street. The resolutions of July 20, and December 7, 1896, were not resolutions for extending or opening the street, but were resolutions stating the lands necessary to be taken to open and extend the street, and providing for their taking. It was only necessary for them to take land to First avenue; when that was done the street would then be opened to the south bounds of the city, as the petition and the resolutions of May twenty-fifth required, so that these resolutions were not in conflict, but in harmony with each other, the latter ones being adopted for the purpose of carrying into effect the resolutions of May twenty-fifth.

Section 81 provides that when it is necessary to condemn lands for street openings or extensions, the condemnation proceedings shall be taken under the provisions of chapter 23 of the Code of Civil Procedure.

Section 3360 of the Code sets forth what is necessary to be alleged in a petition for condemning land.

The petition presented in this case sets forth all the facts necessary to give the court jurisdiction. There is no right to condemn more than is necessary for the public purpose in question. The petition sets forth the lands it was necessary to acquire for the purpose of extending the street to the south bounds of the city. The law requires that the petitioner should set forth its inability to agree with the owners of the land upon its purchase.

The petition herein sets forth that all the owners of the land necessary to be acquired had consented to convey to the city except Wade; it was not necessary, therefore, to condemn the lands of any one except Wade.

The fact, if it be a fact, that such other owners have since receded from their agreement to convey to the city, makes no difference as to the regularity of the proceedings against Wade.

Neither do the proceedings against Wade alone present any legal objection to any subsequent separate proceedings against the lands of the owners whose property it is necessary to have to complete the opening.

While it is more convenient and less expensive to include all the lands and owners in one proceeding, it is not necessary. Separate applications may be made to the court as to each.

. The question has usually arisen, not as to whether separate proceedings can be taken, but as to whether all the lands to be condemned must not be so condemned in one proceeding. (*Brooklyn Elevated R. R. Co.* v. *Nagel*, 75 Hun, 590; affd., 150 N. Y. 562.)

There is another objection to vacating the order and judgment of condemnation.

The proceedings, as we have seen, are governed by the provisions of the Code of Civil Procedure.

Section 3374 of the Code provides that an application for leave to abandon the proceedings and to vacate any order granted must be made before the expiration of thirty days after the entry of the final order. The order herein, as we have seen, was entered January 27, 1897, and the judgment thereon was docketed August 10, 1897, and the petition for leave to abandon the proceedings and for an order setting aside such final order was not made until October 7, 1897, much more than thirty days after the entry of the final order.

The fact that the city failed in its subsequent proceedings to secure orders of condemnation against the lands of those persons who at first agreed, as appears from the petition, to convey to the city, can make no difference here; we must act upon the record before us in the proceeding against the land of Wade, and such proceedings seem to have been regular.

For all these reasons the order appealed from should be reversed, with ten dollars costs and disbursements, and the application of the city denied, with ten dollars costs.

All concurred.

Order reversed, with ten dollars costs and disbursements, and application of the city denied, with ten dollars costs.